(86 N. W. Rep. 118.)

---

PEDER SOLY *vs.* GUDBJORN AASEN, *et al.*

Opinion filed May 2, 1901.

**Fraudulent Conveyances—Action to Set Aside—Creditors.**

S. commenced an action against the defendants, stating as a cause of action in his complaint that one of the defendants had conveyed certain lands to the other defendant with intent to defraud plaintiff, and prevent him from collecting out of such lands a judgment recovered by him against one of said defendants, which said judgment had not been rendered when such conveyance was made, although suit had been commenced against one of said defendants for damages for tort, to-wit, criminal conversation with S.'s wife, such suit resulting in obtaining such judgment. *Held,* that S. was a creditor, within the meaning of section 5052, Rev. Codes.

**Evidence Sustains Judgment.**

Evidence reviewed, and *held* to establish that such conveyance was fraudulent as to plaintiff.

Appeal from District Court, Pembina County; *Sauter, J.*

Action by Peder Soly against Gudbjorn Aasen and Knud G. Aasen. Judgment for plaintiff. Defendants appeal.

Affirmed.

*Cochrane & Corliss,* for appellants.

*Spencer & Sinkler,* for respondent.

MORGAN, J. This is an equitable action, brought to set aside a certain deed given by the defendant Gudbjorn Aasen to his father, Knud G. Aasen, as without consideration, fraudulent, and void so far as the plaintiff's judgment is concerned, and to subject the lands conveyed by such deed to the plaintiff's judgment described in the complaint. The answer denies that such deed was fraudulent and alleges that such lands had been actually owned by defendant Knud G. Aasen since 1890, and further alleges that the son had never had any interest in such lands. The case has been appealed to this court by the defendants, who demand a retrial of the entire case.

The evidence discloses that the plaintiff, Peder Soly, brought an action against the defendant Gudbjorn Aasen in the District Court of Pembina county on the 21st day of June, 1898, alleging in his complaint as a cause of action against said defendant for damages that said defendant had been guilty of criminal conversation with plaintiff's wife. Issue was joined in such action by the service of an answer, followed by a trial, resulting in a judgment in favor of the plaintiff, entered on July 16, 1899, upon which judgment an execution was issued, and returned wholly unsatisfied. The deed sought to be set aside was executed and delivered on December 13, 1898, after the action was commenced, but before verdict or judgment. It is claimed by appellants' attorneys in their brief that the plaintiff was not, on the date of transfer referred to, a creditor of the defendant, within the meaning of § 5052, Rev. Codes, but that he simply had an unliquidated claim for damages for a tort. Said § 5052 reads as follows: "Every transfer of property or charge thereon made, every obligation incurred and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor," etc. Section 5048 provides: "A creditor within the meaning of this chapter is one in whose favor an obligation exists by reason of which he is or may become entitled to the payment of money." The construction contended for by counsel for appellants is too strict and technical, in view of the reading of these sections, considered in connection with the purposes of their enactment,—that of preventing and remedying frauds. In view of such purpose, § 5052 should be liberally and beneficially construed. The construction contended for does not give effect to all the words of the section, and seems to disregard, or fails to give any meaning to, the words "or other person of his demands." Such a construction as contended for would limit its evident purpose, and tend to destroy its usefulness. The following cases are in point, and against the construction contended

for: *Schaible* v. *Arden,* 98 Mich. 70, 56 N. W. 1105; *Day* v. *Lown,* 51 Ia. 364, 1 N. W. 786; *Petree* v. *Brotherton,* 133 Ind. 692, 32 N. E. 300; *Bongard* v. *Block,* 81 Ill. 186; *Pierstoff* v. *Jorges,* 86 Wis. 128, 56 N. W. 735, 39 Am. St. Rep. 881. "The term 'creditors' as employed in the statute is not used in its strict technical sense, but has been construed liberally, and includes all parties who have demands, accounts, interests, or causes of action for which they might recover any debt, demand, penalty, or forfeiture. Such are the interests which the statute says shall be protected, and consequently persons having such interests must be included within its provisions." 8 Am. & Eng. Enc. Law (2d Ed.) 251. In order to understand the merits, more of the facts must be narrated. In 1890, Knud G. Aasen bought the land in suit, giving his note and mortgage for the purchase price. He paid the notes and mortgage in July of that year, the amount being $675. He paid this purchase price out of moneys received by him from Norway, amounting to about $1,000. It is a matter of dispute whether this money was his money or Gudbjorn's. The letter in which the draft payable to Knud G. Aasen was inclosed referred to the draft as "your part of the estate," the son's name not being mentioned so far as the draft was concerned. It is beyond question that the money comes from the estate of Mrs. Knud G. Aasen's father or mother. Mrs. Knud G. Aasen had been dead since 1879, leaving no children except the defendant Gudbjorn. When the land in suit had been paid for under the original purchase in 1890, Knud G. ordered the deed made out to his son Gudbjorn, and it was so deeded. His reason for having it deeded to his son is given by him as follows: "What made me deed it to him in the first place was because I didn't have but one son, and I thought he is to have what is left after me anyhow, he might as well have the deed then as any time." He had other land, the deed being in his own name. At the date of the original deed Gudbjorn was 14 years of age. The defendants have lived together ever since, and worked this land and another place together; the father always taking the proceeds, and paying the taxes, the same as though it were his own land. There is credible testimony amply establishing that statements were freely made by Knud G. and Gudbjorn that the money that came from Norway was Gudbjorn's, and statements have been made by them frequently since that this land belonged to Gudbjorn. We consider such statements more reliable than contrary testimony given by them at present, when there is a strong interest manifested to demonstrate that the land belongs to the father in order to avoid the judgment against the son. His explanation for having the deed made to his son is not satisfactory. His having it deeded to his son was an unusual and extraordinary provision for the son, and not consistent with the facts except on the theory that the money coming from Norway was for his son, and that the land was purchased with such money. He had no debts to avoid, and all his other property was retained in his own name. Why he should change his

mind after nine years, and desire this land to be deeded to him, is not satisfactorily explained, except on the theory that they wished to save it from any judgment that might be obtained in the suit that was then commenced. This suit was talked over between father and son just before the deed was given. True, the father then advanced the son some money on the day the deed was delivered, with which the son was to pay his lawyers. But the father does not claim that such money was a consideration for the deed. He says it was not. He says that he wanted the deed of the land because the land was his. The consideration for the deed was stated in the deed to be $1,500. Why the consideration for this deed was expressed at that or any sum when he was receiving it, as he claims, as a matter of right, is not attempted to be explained. He paid his son, during the time these suits were pending, over $700; but he had the use and profits of the land since 1890, and it is not unreasonable to believe that he owed the son that much and probably more. On the question of taking the deed on December 13th the father says: "I never asked him for a deed until he got into trouble. I don't know whether I would have wanted the deed back if my son had not got into trouble." The circumstances seem conclusively to point to the fact that the deed was given because the suit was pending, and for no other purpose. Such is our positive opinion. No other conclusion can reasonably follow a careful review of the whole evidence. The deed was therefore fraudulent so far as plaintiff's judgment was concerned, and given with intent to evade it when rendered. Judgment affirmed. All concur.