JOHN EWANIUK and Peter Strilczuk, Copartners Doing Business under the Firm Name and Style of Ewaniuk & Strilczuk v. JACOB ROSENBERG, Morris Rosen, and Ben Rosenberg.

(157 N. W. 691.)

**Merchandise stock — sale of — action to avoid — sale in bulk — merchandise and fixtures — creditors — statutes — notice.**

A party who seeks to avoid a sale of a stock of merchandise solely on the ground that such sale was made in violation of § 7224, Compiled Laws 1913, which provides that a sale in bulk of any part or the whole of a stock of merchandise .or merchandise and fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade, shall be void as against the creditors of the seller, unless the provisions of the law are complied with, must show that at the time of the sale or transfer he was an existing creditor of the seller and entitled to notice as such under the provisions of the law.

Opinion filed March 31, 1916. Rehearing denied April 27, 1916.

From a judgment of the District Court of Stark County, *Crawford,* J., defendants appeal.

Reversed.

*W. F. Burnett (H. J. Blanchard,* of counsel), for appellants.

The statute, § 7224 of the Revised Codes of 1913, known as the Bulk Sales Law, is unconstitutional. It applies only to merchants, and then to those who are able to pay, as well as to those who are insolvent. A good, responsible merchant cannot sell any considerable quantity or unusual amount of his stock without giving to the creditors the notice required by this statute. The law is unjust and unreasonable if intended to cover such a transaction. Everett Produce Co. v. Smith Bros. 40 Wash. 566, 2 L.R.A.(N.S.) 331, 111 Am. St. Rep. 979, 82 Pac. 905, 5 Ann. Cas. 798; Bowen v. Quigley, 165 Mich. 337, 34 L.R.A.(N.S.) 218, 130 N. W. 690; Cooney, E. & Co. v. Sweat, 133 Ga. 511, 25 L.R.A.(N.S.) 758, 66 S. E. 257.

A statute that is inquisitorial in that it compels the divulging of business secrets which the parties have a right to keep to themselves is pernicious, and ought not to be sustained. Wright v. Hart, 182 N. Y. 350, 2 L.R.A.(N.S.) 338, 75 N. W. 404, 3 Ann. Cas. 263; Everett Produce

Co. v. Smith, 40 Wash. 566, 2 L.R.A.(N.S.) 331, 111 Am. St. Rep.
979, 82 Pac. 905, 5 Ann. Cas. 798; Young v. Lemieux, 79 Conn. 434,
20 L.R.A.(N.S.) 160, 129 Am. St. Rep. 193, 65 Atl. 436, 600, 8 Ann.
Cas. 452; Boisé Asso. v. Ellis, 26 Idaho, 438, L.R.A.1915E, 917, 144
Pac. 60; Williams & T. Co. v. Preslo, 84 Ohio St. 328, 95 N. E. 900,
Ann. Cas. 1912C, 707; Wm. R. Moore Dry Goods Co. v. Rowe, 99 Miss·
30, 54 So. 659, Ann. Cas. 1913C, 1214; Miller v. Crawford, 70 Ohio St.
207, 71 N. E. 631, 1 Ann. Cas. 558; McKinster v. Sager, 163 Ind. 671,
68 L.R.A. 273, 106 Am. St. Rep. 268, 72 N. E. 854; Block v. Schwartz,
27 Utah, 389, 65 L.R.A. 308, 101 Am. St. Rep. 971, 76 Pac. 22, 1
Ann. Cas. 550; Off v. Morehead, 235 Ill. 40, 20 L.R.A.(N.S.) 167,
126 Am. St. Rep. 184, 85 N. E. 264, 14 Ann. Cas. 434.

The plaintiffs at the time of the sale of the stock in question were not
creditors of the vendor, within the meaning of the Bulk Sales Law.  "A
creditor within the meaning of this chapter is one in whose favor an
obligation exists by reason of which he is or may become entitled to the
payment of money."  Comp. Laws 1913, §§ 7216, 7285; Winans v.
Beidler, 6 Okla. 603, 52 Pac. 405; Karst v. Gane, 61 Hun, 533, 16
N. Y. Supp. 385; Beers v. Hanlin, 99 Fed. 695; Hill v. Bowman, 35
Mich. 191.

*C. H. Starke,* for respondents.

The "Bulk Sales Law" of this state is constitutional.  The law is in-
tended to prevent fraudulent sales and to protect creditors, and the
state, under police powers, has the right to enact such a law.  Everett
Produce Co. v. Smith, 40 Wash. 566, 2 L.R.A.(N.S.) 331, 111 Am. St.
Rep. 979, 82 Pac. 905, 5 Ann. Cas. 798; Young v. Lemieux, 79 Conn.
434, 20 L.R.A.(N.S.) 160, 129 Am. St. Rep. 193, 65 Atl. 436, 600,
8 Ann. Cas. 452, 211 U. S. 489, 53 L. ed. 295, 29 Sup. Ct. Rep. 174;
Boisé Asso. v. Ellis, 26 Idaho, 438, L.R.A. 1915E, 917, 144 Pac. 6;
Kidd, D. & P. Co. v. Mussleman Grocer Co. 217 U. S. 461, 54 L. ed.
839, 30 Sup. Ct. Rep. 606.

The plaintiffs at the time of the sale of the stock of merchandise were
creditors of the seller.  The goods were purchased with the understand-
ing that if not satisfactory they could be returned.  The purchaser is
the sole judge in such cases, and if not satisfied he may return the
goods.  Garland v. Keeler, 15 N. D. 551, 108 N. W. 484; McCormick
Harvesting Mach. Co. v. Okerstrom, 114 Iowa, 260, 86 N. W. 284.

It is in effect a mutual consent to rescission. Comp. Laws 1913, § 5934; 35 Cyc. 128; Alden v. Thurber, 149 Mass. 271, 21 N. E. 312.

Where goods so purchased are returned by the purchaser to the vendor, delivery to the carrier consigned to vendor is delivery to vendor. A. J. Neimeyer Lumber Co. v. Burlington & M. River R. Co. 54 Neb. 321, 40 L.R.A. 534, 74 N. W. 670; Kelsea v. Ramsey & G. Mfg. Co. 22 L.R.A. 415, subject note; Comp. Laws 1913, chap. 111, § 7216; Soly v. Aasen, 10 N. D. 108, 86 N. W. 108; First Nat. Bank v. Calkins, 16 S. D. 445, 93 N. W. 646; Keel v. Larkin, 72 Ala. 493; Loughridge v. Bowland, 52 Miss. 546; Anderson v. Anderson, 64 Ala. 403; De Ruiter v. De Ruiter, 28 Ind. App. 9, 91 Am. St. Rep. 107, 62 N. E. 100.

The statute declares that a sale made of a stock of goods shall be void as against creditors of the seller, unless the seller shall, at least five days before the sale, make inventory, showing quality, cost price to seller, of each article included in sale. Also upon demand of the purchaser, a written list of the names of indebtedness to each, and certified by seller under oath. Comp. Laws 1913, § 7224.

CHRISTIANSON, J. On December 10, 1913, and for some time prior thereto, the defendant Jacob Rosenberg owned and operated a clothing store at Dickinson. The plaintiffs at this time were operating a store at Gorham. On December 10, 1913, the plaintiffs purchased from the defendant Jacob Rosenberg certain clothing, which they intended to place and did place on sale in their store at Gorham. The total price paid by plaintiffs, exclusive of all discounts allowed them, was $152.50. The plaintiff Strilczuk personally selected all the clothing so sold and paid for the same at that time. Upon the invoice of the clothing so sold the defendant made the following indorsement: "Agreed with Mr. Peter Strilczuk if any of the suits does not prove satisfactory should except back." The evidence does not show when these goods were placed in plaintiffs' store at Gorham, although Peter Strilczuk testifies that they kept these suits in their store and made efforts to sell them for a period of about fifteen days, and that during that time they tried to sell them to a number of people and found that they could not sell them owing to the fact, as he states: "The coat was too small and the pants too

big to make a fit." He further testifies that on December 30, 1913, he shipped these goods back to the defendant Jacob Rosenberg, from Belfield, North Dakota, to Dickinson, North Dakota, and wrote and informed him of such fact. There is no testimony showing when the goods arrived at Dickinson, nor is there any evidence whatever offered by the plaintiffs showing that the goods were returned in good condition, nor is there any evidence whatever showing the method of transmission of the plaintiffs' alleged notification to the defendant of the return of the goods. There is no evidence showing that any letter was mailed or any notice delivered to defendant personally or at all. There is no contention that the plaintiffs in any manner notified the defendant of their intention to return the goods at any time prior to their shipment.

In the meantime the defendant Jacob Rosenberg entered into negotiations with the defendants Morris Rosen and Ben Rosenberg to sell his business to them. The testimony shows that, in connection with these negotiations, they commenced taking stock or inventory about December 24, 1913, and completed the same a day or so thereafter, and that "right after Christmas" the deal was made, but that owing to some delay on the part of Morris Rosen and Ben Rosenberg in obtaining the necessary moneys to pay the consideration agreed upon, the deal was not consummated until on December 31, 1913, when they paid Jacob Rosenberg the agreed consideration in cash, and received from him a bill of sale for the entire stock of goods, and entered into possession of the business. The evidence shows that an inventory was made showing the value of the stock and fixtures at $11,464.66. It is also undisputed that Jacob Rosenberg stated that there were no creditors, and that the few outstanding bills would be paid by him. It is also undisputed that prior to the consummation of the deal Jacob Rosenberg made remittances in full to every creditor appearing upon his books.

The goods returned by the plaintiffs were not received at Dickinson until some time in January, 1914. The defendant Jacob Rosenberg was no longer there, and the defendants Morris Rosen and Ben Rosenberg refused the shipment, and caused the same to be returned to the plaintiffs, who have retained possession thereof since that time.

Plaintiffs thereafter brought this action upon the theory that the sale made by Jacob Rosenberg was void for failure to comply with the pro-

visions of the so-called "bulk sales law" of this state. The trial court rendered judgment for plaintiffs, and defendants have appealed from such judgment.

The bulk sales law was first enacted in this state as chapter 221, Laws 1907, being entitled, "An Act Providing for the Giving of Notice by Merchants to Their Creditors before Making Sale of Their Entire Stock of Goods." It was subsequently amended by chapter 247, Laws 1913, and incorporated as §§ 7224–7227 inclusive of the Compiled Laws of 1913. The provisions applicable in this action are as follows: "The sale, transfer or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise and fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller, transferrer or assignor, shall be void as against the creditor of the seller, transferrer or assignor, unless the seller, transferrer, assignor and purchaser, transferee and assignee, shall, at least five days before the sale, make a full detailed inventory, showing the quality and, so far as possible with exercise of reasonable diligence, the cost price to the seller, transferrer and assignor of each article to be included in the sale; and unless the purchaser, transferee and assignee demand and receive from the seller, transferrer and assignor a written list of names and addresses of the creditors of the seller, transferrer and assignor with the amount of indebtedness due or owing each, and certified by the seller, transferee and assignor, under oath, to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser, transferee and assignee shall, at least five days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally or by registered mail every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof." (Comp. Laws 1913, § 7224.)

"Any purchaser, transferee or assignee, who shall not conform to the provisions of this chapter shall, upon application of any of the creditors of the seller, transferrer or assignor, become a receiver and be held accountable to such creditors for all the goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale, transfer or assignment. (Comp. Laws 1913, § 7226.)

34 N. D.—7.

"Provided, however, that any purchaser, transferee or assignee, who shall conform to the provisions of this chapter shall not in any way be held accountable to any creditor of the seller, transferrer or assignor for any of the goods, wares, merchandise or fixtures that have come into the possession of said purchaser, transferee or assignee by virtue of such sale, transfer or assignment." (Comp. Laws 1913, § 7227.)

The purpose of such legislation was pointed out by Vann, J., in a dissenting opinion delivered by him in Wright v. Hart, 182 N. Y. 350, 2 L.R.A.(N.S.) 338, 75 N. E. 404, 3 Ann. Cas. 263. He said: "The object of the act was to suppress a widespread evil, well known to current history and condemned by repeated adjudications in this court and in all the leading courts of this state from time out of mind. That evil is the tendency and practice of merchants who are heavily in debt to make secret sales of their merchandise in bulk for the purpose of defrauding creditors. Common observation shows that when a dealer has reached a point in his business career where he cannot go on owing to the claims of creditors, the temptation is strong and the practice common of making a fraudulent sale. Fraud works in secret, and the bargain is closed and the purchaser in possession before the creditors know anything about it."

In discussing the constitutionality of the Connecticut "bulk sales law," in Lemieux v. Young, 211 U. S. 489, 53 L. ed. 295, 29 Sup. Ct. Rep. 174, the United States Supreme Court, speaking through the present Chief Justice White, said: "A retail dealer who owes no debts may lawfully sell his entire stock without giving the required notice. One who is indebted may make a valid sale without such notice, by paying his debts, even after the sale is made. Insolvent and fraudulent vendors are those who will be chiefly affected by the act, and it is for the protection of creditors against sales by them of their entire stock at a single transaction, and not in the regular course of business, that its provisions are aimed."

There is no contention that Jacob Rosenberg was insolvent or financially embarrassed at the time of the transfer,—the evidence shows that he paid every one of his creditors in full. Nor is there any contention that Jacob Rosenberg actually transferred the property for the purpose of defrauding plaintiffs or anyone else. Such actual fraudulent intent is negatived by the undisputed facts in the case. The plaintiffs

rely solely upon the proposition that the transfer is fraudulent in law, and void under the terms of the statute above quoted.

The act under consideration merely avoids a sale made under the circumstances therein specified, and then only as against "the creditor" of the seller. Obviously the act applies only to creditors existing at the time of the transaction, and not to creditors whose claims came into existence subsequent to the sale or transfer. See Union Nat. Bank v. Oium, 3 N. D. 193, 44 Am. St. Rep. 533, 54 N. W. 1034; Putnam, Aldrich & Putnam v. McCormick, 159 Iowa, 702, L.R.A. —, —, 140 N. W. 886, Ann. Cas. 1915D, 31; Hart v. Brierley, 189 Mass. 598, 76 N. E. 286. A party who seeks to invoke the benefit of this statute must bring himself within its terms and show that he was entitled to its protection.

It is one of the maxims of our jurisprudence that "interpretation must be reasonable." (Comp. Laws 1913, § 7276.) It is also well settled that, in determining the meaning of an ambiguous statute, "the object sought to be accomplished exercises a potent influence in determining the meaning of not only the principal, but also the minor, provisions of the statute. To ascertain it fully, the court will be greatly assisted by knowing, and it is permitted to consider, the mischief intended to be removed or suppressed, or the necessity of any kind which induced the enactment." Sutherland, Stat. Constr. 2d ed. § 456; see also 26 Am. & Eng. Enc. Law, 602.

The undisputed evidence shows that the plaintiffs purchased and paid for the goods in question on December 10, 1913. It also shows that plaintiffs personally selected these goods from Rosenberg's stock at Dickinson on that day; that the plaintiffs thereafter retained such goods in their store at Gorham until December 30, 1913. There is no contention that they notified defendant of any dissatisfaction with the goods until they returned them. There is not the slightest proof that Jacob Rosenberg had any notice or knowledge on December 31, 1913, or at any time prior thereto, that plaintiffs intended or desired to return the goods. In fact the evidence justifies a contrary conclusion. Therefore when Jacob Rosenberg negotiated and completed the sale to his codefendants, he had absolutely no reason to believe that the plaintiffs had or ever would have any claim against him. If Jacob Rosenberg, at the time of the taking of the inventory on December 24, 1913,

or at any time thereafter up to and including December 31, 1913, had made a list of his assets and liabilities from the knowledge that he then possessed, what possible reason would he have had for including among his assets the goods sold to the plaintiffs, or scheduling plaintiffs among his creditors? Obviously none. Plaintiffs were the owners of the goods unless they chose to return them. The right to return existed only in case the goods proved unsatisfactory. If the plaintiffs elected to return the goods, they were required to do so within a reasonable time, otherwise the right to return would be lost. 35 Cyc. 154. Until they exercised the option, and notified Rosenberg of their election to return, plaintiffs remained the apparent and presumptive owners of the goods. The evidence in this case shows that the plaintiffs had not imparted any notice to the defendant of any intention on their part to return the goods at the time the sale was made, and that during all of the negotiations for, up to and including the completion of, the transfer, defendants were fully justified in acting upon the assumption that plaintiffs were the owners of the goods, and in no manner creditors of Jacob Rosenberg. No duty or obligation rested upon Rosenberg to pay any moneys to the plaintiffs, at least until he was notified of the fact that plaintiffs desired to avail themselves of the option to return the goods. Even if Rosenberg, instead of paying off his creditors, had furnished a list thereof to this purchaser, plaintiffs would not have been included in such list. Hence, they would have received no notice. This being so, how were they prejudiced because such notices were not sent, and how can they assail the validity of the sale on this ground? He who is not entitled to notice can hardly complain because someone else was not notified. He whose rights are not affected by reason of the failure on the part of someone to perform an act can hardly be heard to complain of such nonperformance.

Plaintiffs cite and rely upon the decision of this court in Soly v. Aasen, 10 N. D. 108, 86 N. W. 108. In that case the issue was one of actual fraud, and it was undisputed that the conveyance assailed was executed several months after plaintiff had instituted an action for damages against the fraudulent grantor. We have no reason to doubt the correctness of that decision, but it has no application to the facts in this case.

The judgment appealed from is reversed, and the action ordered dismissed as against the defendants Morris Rosen and Ben Rosenberg.