GEORGE P. McMILLEN, Receiver and Respondent, v. A. N. NELSON, Claimant and Appellant.

(181 N. W. 618.)

**Fraudulent conveyances — purchaser who has failed to comply with Bulk Sales Law cannot recover against receiver on an assigned claim payment of which was assumed by such purchaser.**

In September, 1918, the appellant, Nelson, purchased a going retail hardware business from one Zorn. The property transferred by Zorn to Nelson in such transaction consisted of the hardware stock and fixtures, the premises where the business was being conducted, and a certain dwelling house. In consideration of the transfer to him of this property, Nelson conveyed to Zorn certain equities in Minnesota lands; paid him $491.58 in cash, and assumed and agreed to pay debts which Zorn owed to certain wholesale houses. Among the claims which Nelson assumed and agreed to pay was one in favor of Farwell,

---

Note.—For authorities expressly considering or necessarily involving and passing upon the question as to the form of remedy available to the creditors of one who has sold goods in violation of the Bulk Sales Law, see note in 39 L.R.A. (N.S.) 374, on remedy of creditors where sale is made in violation of Bulk Sales Law.

On right of purchaser in violation of Bulk Sales Law, where price has been applied to payment of creditors of seller, see note in 51 L.R.A.(N.S.) 343.

Ozmun, Kirk, & Company. On September 25, 1918, Nelson settled such claim by paying Farwell, Ozmun, Kirk, & Company, $468 in cash, and executing and delivering to it certain notes for the balance of the claim. In the transaction between Nelson and Zorn there was no attempt whatsoever to comply with the provisions of the so-called Bulk Sales Law (Comp. Laws 1913, §§ 7224–7227). On August 16, 1919, upon proceedings instituted by certain creditors, a receiver was appointed to take charge of the hardware stock, and distribute the proceeds thereof *pro rata* among the creditors entitled thereto. On December 15, 1919, Farwell, Ozmun, Kirk, & Company executed a written assignment to Nelson of the claim which it had against Zorn on September 25, 1918. Nelson at no time rescinded or attempted to rescind the transaction with Zorn. On or about December 29, 1919, Nelson, claiming to be the owner of such claim, presented it to the receiver for allowance. The receiver rejected it. The trial court sustained the action of the receiver.

*Held,* that the trial court's ruling was correct.

Opinion filed January 29, 1921. Rehearing denied February 17, 1921.

Appeal from the District Court of Bottineau County, *Burr,* J.

A. N. Nelson appeals from an order rejecting a claim presented to a receiver.

Affirmed.

*Harold B. Nelson,* for claimant and appellant.

The debt of Zorn to Farwell, Ozmun, Kirk, and Company was transferred, not paid. Savage v. Murphy, 90 Am. Dec. 733; Thomas v. Lye, 37 Ill. App. 482; Barhydt v. Perry, 10 N. W. 820.

Any interest in property may be transferred under our statute, and the transfer of a thing transfers all of its incidents. Comp. Laws 1913, §§ 5438, 5509.

And a consideration is unnecessary to its validity. Comp. Laws 1913, § 5489.

The assignment of the Zorn claim, or its transfer to Nelson, carried with it the right of Nelson to file it with the receiver and share in the distribution of the estate. 1 Moore, Fraud. Conv. p. 204; Hand v. Breckenridge, 56 N. W. 221.

The assignee of a claim founded in contract may sue to set aside a fraudulent conveyance by the debtor, though the conveyance was made prior to the assignment. Noble v. McKeith, 86 N. W. 526; Hernton v. Short, 181 S. W. 142; Gill v. Newhouse, 178 S. W. 495.

One who pays a debt which, being bound with or for others, he has an interest to discharge, is legally subrogated to all the creditors' rights, and may use all the means he could to enforce payment. Nichols v. DeEnde, 3 Mart. (N.S.) 310; Surres v. His Creditors, 3 La. 341.

Knowledge of the sale does not estop a creditor from claiming the benefits of the law. Modinette County Sav. Bank v. Koivisto, 127 N. W. 680; People's Sav. Bank v. Van Allsburg, 131 N. W. 101; National Grocer Co. v. Hanna, 133 N. W. 493.

*W. H. Adams,* for receiver and respondent.

The Bulk Sales Law applies only to creditors existing at the time of the sale and transfer of merchandise and fixtures. N. D. Comp. Laws 1913, § 7224; Ewaniuk v. Rosenberg, 34 N. D. 93–99.

Claimant, if creditor, cannot share with Zorn's other creditors. N. D. Comp. Laws 1913, §§ 7224–7227.

The appellant would be permitted, if his contention were sustained, to receive the benefit from his own wrongful act. He is not entitled to any relief under the circumstances. 21 C. J. 184, 185.

No one can take advantage of his own wrongdoing. N. D. Comp. Laws, § 7251.

CHRISTIANSON, J. In September, 1918, the appellant, Nelson, purchased from one Zorn a hardware store located at Gardena, in Bottineau county in this state. The appellant purchased the entire business, including the premises where the business was transacted, the fixtures, and the stock. In consideration of the transfer to him of this property, Nelson conveyed to Zorn certain lands in Minnesota, subject to certain mortgages (the payment of which was assumed by Zorn); paid him some $491.58 in cash, and assumed and agreed to pay debts owing by Zorn to certain wholesale houses. Among the claims which Nelson assumed and agreed to pay was one in favor of Farwell, Ozmun, Kirk, & Company, in the sum of $4,947.84. Part of this claim was represented by open account and part by notes. On September 25, 1918, Nelson paid this claim,—part in cash and in part by giving his notes, all of which were later paid. In the transaction between Nelson and Zorn there was no attempt to comply with the provisions of the so-called Bulk Sales Law of this state. On November 21, 1918, the Bottineau County Bank, one of the creditors of Zorn, brought an

action and caused an attachment to be levied upon the hardware stock. On August 16, 1919, the Bottineau County Bank (and other creditors of Zorn) made application to the district court for the appointment of a receiver to take charge of the hardware stock. In that application it was stated that such creditors had instituted actions on debts existing prior to the sale by Zorn to Nelson; and that such sale was made without any compliance whatsoever with the provisions of the Bulk Sales Law of this state. The application for the appointment of a receiver came on to be heard pursuant to stipulation between the attorney representing the creditors of Zorn and the attorney representing the appellant, Nelson. A receiver was accordingly appointed, and he forthwith qualified and entered upon the discharge of his duties. On December 15, 1919, Farwell, Ozmun, Kirk, & Company executed a written assignment, in which it is recited that it "does hereby sell, assign, transfer, and set over onto the said party of the second part (Nelson) his heirs, executors, administrators, and assigns, without recourse upon the first party (Farwell, Ozmun, Kirk, & Company), all of the right, title, and interest first party has or had in and to that certain account with one T. H. Zorn, of Gardena, North Dakota . . . on which account there was due on the 25th day of September, 1918, the sum of $4,947.84 . . . said sum of $4,947.84 being for goods, wares, and merchandise sold and delivered by first party to the said T. H. Zorn, prior to the 25th day of September, 1918, and on which there remains due to the first party from the said T. H. Zorn on said day said sum of $4,947.84." Nelson presented this claim to the receiver, who rejected it. At the time the receiver's report was presented, Nelson objected to the disallowance of his claim, and the matter came on for hearing before the district court, with the result that an order was entered sustaining the action of the receiver.

The sole question presented on this appeal is the correctness of the order made by the district court. The only papers certified to this court on appeal are—the summons, complaint, affidavit for attachment, undertaking in attachment, warrant of attachment, sheriff's return, application for appointment of receiver, stipulation for hearing of such application, order appointing receiver, assignment of claim by Farwell, Ozmun, Kirk, & Company to Nelson. Proof of claim by Nelson, order of receiver disallowing claim, report of receiver, objections

to disallowance, order to show cause hearing receiver's report, order confirming receiver's report, application for and order enlarging time in which to procure "a transcript of the proceedings had in said matter of the official stenographer reporting the same," stipulation as to the papers to be certified to this court, order identifying such papers, notice and undertaking on appeal. We have no means of knowing what proceedings were had, or what proofs were adduced, upon the hearing before the trial court; for although the record before us shows that the time was enlarged in which to obtain a transcript of the proceedings had before the trial court, such transcript is not in the record. However, there is apparently little or no dispute as to the transaction between Nelson and Zorn. In his brief on this appeal, appellant says: *"It was agreed in the deal that Nelson was to take over the payment of the amounts owing the wholesale houses, and that Zorn was to take over the payment of the amount due on the mortgages on the land.* The value of Nelson's interest in the land was estimated, and it was agreed that an inventory of the hardware stock should be taken, and, if inventoried below a certain amount, Zorn was to pay up the deficiency, and if more than a certain amount Nelson was to pay the difference to Zorn. Thereafter and on September 18, 1918, the inventory was taken, and on September 25, 1918, Nelson was given the possession of the hardware business and Zorn was given possession of the Minnesota land. *In conformity with the agreement between Nelson and Zorn, Nelson did take over the payment of the wholesale accounts.*

It is the account of Farwell, Ozmun, Kirk, & Company against Zorn, as it existed on September 25, 1918, that is the basis of the controversy in this case.

". . . There had been no compliance with the sales in the Bulk Law, as Nelson was informed when inquiry of Zorn was made that all his indebtedness consisted of the accounts he owed to the wholesale houses. Zorn, however, did have other creditors, and thereafter several of them instituted actions upon their claims against Zorn, and attached the hardware stock, and subsequently applied to the court for the appointment of a receiver to distribute the proceeds of the stock *pro rata,* among the creditors of Zorn."

"In his brief, the respondent, says: 'The respondent desires to supplement appellant's statement of facts. Besides the hardware stock and

fixtures, the defendant Zorn sold to claimant, A. N. Nelson, a store building and lot and a dwelling house and lot, both in Gardena, North Dakota. As consideration for the hardware stock and fixtures, store building and lot, and dwelling and lot, claimant, A. N. Nelson, transferred to defendant Zorn an equity in real property in the state of Minnesota, paid him $491.58 in cash, and assumed and agreed to pay the indebtedness owing by said Zorn to Farwell, Ozmun, Kirk, & Company, the amount of which was $4,947.84. This claim was evidenced by notes executed and delivered by Zorn to Farwell, Ozmun, Kirk, & Company. Claimant Nelson paid Farwell, Ozmun, Kirk, & Company, a part of this claim and gave them his notes for the balance, and, having paid such notes, Farwell, Ozmun, Kirk, & Company thereupon transferred their Zorn notes and assigned their Zorn account to claimant Nelson. We desire to emphasize the fact that claimant Nelson assumed and agreed to pay Zorn's indebtedness to Farwell, Ozmun, Kirk, & Company, as a part of the purchase price which he paid Zorn for the hardware stock and fixtures, the store building and lot, and the dwelling and lot, which he bought from Zorn. And it is the same $4,947.84 which he paid, or assumed and agreed to pay Farwell, Ozmun, Kirk, & Company, that he claims should be repaid to him out of the Zorn stock of merchandise and fixtures in the hands of the receiver McMillen. Nelson also filed with the receiver a claim for the $491.58 which he paid Zorn as part consideration. This claim was also disallowed, but no appeal is taken from its disallowance.'

" 'The contract which claimant Nelson made with Zorn has never been rescinded. Zorn still retains the money paid him by Nelson and the Minnesota land. Nelson retains the store building and lot and the dwelling house and lot in Gardena, North Dakota.' "

In its memorandum decision the trial court said: "The defendant Zorn was the owner of a stock of merchandise consisting of hardware, etc. He entered into a contract with one A. N. Nelson, by the terms of which he sold this stock of merchandise in bulk to the said A. N. Nelson. It appears that Nelson was trading Zorn land for the stock of goods, with the agreement that, if the stock of goods inventoried more than the agreed value of the land, then Nelson would pay the difference in cash; and if the stock inventoried less than the agreed value of the

47 N. D.—19.

land then Zorn would pay to Nelson the difference in cash. It was also agreed that Nelson should assume the claim of Farwell, Ozmun, Kirk, & Company against Zorn, and it is this claim which the receiver disallowed. This claim was assumed by Nelson as part of the purchase price of the stock of goods. Farwell, Ozmun, Kirk, & Company agreed to this assumption of the claim by A. N. Nelson, and Nelson executed and delivered to the company his notes for the full amount of the claim after paying some $468 in cash."

From these statements it appears that there unquestionably was a deal made whereby Zorn transferred a stock of hardware and fixtures (and certain real property) to the appellant Nelson. That, as consideration for the property which Zorn so transferred, Nelson (1) transferred some Minnesota land, (2) paid Zorn $491.58 in cash, and (3) assumed and agreed to pay certain debts owing by Zorn, among which was the account of Farwell, Ozmun, Kirk, & Company. That Nelson, later, on September 25, 1918, paid such debt by paying Farwell, Ozmun, Kirk, & Company, $468 in cash, and giving his notes for the balance. That on December 15, 1919, Farwell, Ozmun, Kirk, & Company, executed a written assignment, whereby it purported to assign to Nelson the claim which it had against Zorn on September 25, 1918.

The Bulk Sales Law was first enacted in this state as chapter 221, Laws 1907, being entitled, "An Act Providing for the Giving of Notice by Merchants to Their Creditors before Making Sale of Their Entire Stock of Goods." It was subsequently amended by chapter 247, Laws 1913, and incorporated as §§ 7224–7227 inclusive of the Compiled Laws of 1913. The provisions applicable in this action are as follows: "The sale, transfer, or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise and fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller, transferrer, or assignor, shall be void as against the creditor of the seller, transferrer, or assignor, unless the seller, transferrer, assignor and purchaser, transferee, and assignee, shall, at least five days before the sale, make a full detailed inventory showing the quality, and, so far as possible with exercise of reasonable diligence, the cost price to the seller, transferrer, and assignor, of each article to be included in the sale; and unless the purchaser, transferee, and assignee demand and

receive from the seller, transferrer, and assignor a written list of names and addresses of the creditors of the seller, transferrer, and assignor, with the amount of indebtedness due or owing each, and certified by the seller, transferee, and assignor, under oath, to be a full, accurate, and complete list of his creditors, and of his indebtedness; and unless the purchaser, transferee, and assignee shall, at least five days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally or by registered mail every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms, and condition thereof." Comp. Laws 1913, § 7224.

"Any purchaser, transferee, or assignee who shall not conform to the provisions of this chapter shall, upon application of any of the creditors of the seller, transferrer, or assignor, become a receiver and be held accountable to such creditors for all the goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale, transfer or assignment." Comp. Laws 1913, § 7226.

"Provided, however, that any purchaser, transferee or assignee, who shall conform to the provisions of this chapter shall not in any way be held accountable to any creditor of the seller, transferrer, or assignor for any of the goods, wares, merchandise, or fixtures that have come into the possession of said purchaser, transferee or assignee by virtue of such sale, transfer or assignment." Comp. Laws 1913, § 7227.

The act applies only to creditors existing at the time of the transaction, and not to creditors whose claims have come into existence subsequent to the sale or transfer. Ewaniuk v. Rosenberg, 34 N. D. 93, 99, 157 N. W. 691.

It is elementary that the order appealed from is presumed to be correct, and that the appellant has the burden of presenting to this court a record affirmatively showing it to be erroneous. As already indicated, we have before us only the judgment roll, and we are, of course, limited to a consideration of whatever errors, if any, appear therein. There is no basis in the judgment roll for some of the facts asserted in the briefs on this appeal. In fact, upon the record before us, the order might well be affirmed on the ground that there is nothing in the judgment roll to show that the order is incorrect. But, assuming the facts to be as asserted in the briefs and in the trial court's memorandum de-

cision, we have a situation where Nelson is attempting to recover a part of the purchase price which he agreed to, and did, pay Zorn for the property which he purchased. There is no basis for the contention that Nelson intended to and did buy the claim from Farwell, Ozmun, Kirk, & Company. That is inconsistent with the arrangement which he made with Zorn, and the assignment was not made until more than a year after the claim had been paid off by Nelson. The only theory on which Nelson can be permitted to recover is that he is entitled to be subrogated to the rights of the creditor whose claim he paid. We are aware that there are cases arising under the Bulk Sales Acts, which have applied the doctrine of subrogation where the purchaser has paid off existing encumbrances against the stock, or paid claims of creditors. In other words, they have applied the rule that where a conveyance is merely constructively fraudulent, or where the grantee is not a participant in or chargeable with knowledge of the fraud of the grantor, such grantee is entitled to be subrogated to the rights of the creditors whom he has paid. We do not find it necessary to determine whether one who purchases a stock of goods in violation of the provisions of the Bulk Sales Act can invoke the doctrine of subrogation, and thereby, in effect, recover a part of the purchase price. The doctrine of subrogation is a creature of courts of equity. It is applied to the facts and circumstances of each particular case according to the principles of justice. It will never be enforced where the equities are equal, or the rights are not clear, nor to the prejudice of the legal or equitable rights of others. Story, Eq. Jur. 14th ed. § 707. In this case the receiver in his report said: "The Farwell, Ozmun, Kirk, & Company was advised and had actual knowledge that a sale and transfer of said stock and merchandise was to be made by the said Theo. H. Zorn to the said A. N. Nelson, and, at the request of both said Zorn and Nelson, sent an expert from the house to make the appraisal of said stock of hardware and merchandise at the time of said transfer." The receiver further reported that said Nelson had abstracted and carried away in his automobile certain portions of said stock, and had shipped to his home in Minnesota goods of the value of $441.05. The trial court, in its order approving the report, found these statements to be true. As already stated Nelson received not only the stock of hardware, he received a going business, including good will, and the building where the business was being con-

ducted, and a certain dwellinghouse. Such real estate was, of course, not within the terms of the Bulk Sales Law, and is therefore beyond the reach of creditors, unless the sale was in fact made in fraud of creditors. So far as the record shows, Nelson never has sought to rescind the transaction with Zorn. On the contrary he has affirmed it. He still retains and claims to be the owner of the real property. He still claims as purchaser of the stock of goods. So far as we are aware the evidence adduced before the trial court may have shown that Zorn and Nelson intentionally evaded and failed to comply with the provisions of the Bulk Sales Law. Assuming, without deciding, that the doctrine of subrogation may be applicable in certain cases in favor of one who purchases a stock of goods in violation of the Bulk Sales Act, we do not believe that the record before us in this case warrants its application.

The order appealed from must be affirmed. It is so ordered.

Bronson and Birdzell, JJ., concur.

Robinson, Ch. J. I dissent.

Grace, J. (dissenting). The facts of this case are quite fully set forth in the majority opinion, and it is needless here to restate them. The section of our statute here for construction is § 7224, Comp. Laws 1913, and it provides: "The sale, transfer, or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise and fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller, transferrer, or assignor, shall be void as against the creditor of the seller, transferrer, or assignor, unless the seller, transferrer, assignor and purchaser, transferee, and assignee shall, at least five days before the sale, make a full detailed inventory, showing the quality, and, so far as possible with exercise of reasonable diligence, the cost price to the seller, transferrer, and assignor of each article to be included in the sale; and unless the purchaser, transferee, and assignee demand and receive from the seller, transferrer, and assignor a written list of names and addresses of the creditors of the seller, transferrer and assignor, with the amount of indebtedness due or owing each, and certified by the seller, transferee, and assignor, under oath, to be a full,

accurate, and complete list of his creditors, and of his indebtedness; and unless the purchaser, transferee, and assignee shall, at least five days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally or by registered mail every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms, and conditions thereof."

It is conceded that the purchaser of this stock of merchandise paid therefor full value, that he acted in good faith in every respect, and that there is no actual fraud. In view of these facts, it is clear that no creditor, excepting one who has attached the property, or who has obtained a lien thereon by garnishment, etc., and who has obtained judgment for his debt, is entitled to appropriate the property held by the innocent vendee, who has paid the seller the full consideration for it. McGreenery v. Murphy, 76 N. H. 338, 39 L.R.A.(N.S.) 374, 82 Atl. 720.

Again, we think it is correct to hold that the purchaser of a stock of goods in good faith, for full value, who became such without attempting to comply with the Bulk Sales Law, and who pays one of the creditors of the seller, would be liable only to the other creditors for their *pro rata* share of the contract price of the property sold, and that the purchaser would be entitled to share *pro rata* for the share he had thus paid over to any creditor. That is, Nelson having paid the claim of Farwell, Ozmun, Kirk, & Company, he is entitled, with the remaining creditors, to share *pro rata* in the distribution of the value of the whole stock of merchandise. In other words, he is entitled, as a matter of law, to be subrogated to the rights of Farwell, Ozmun, Kirk, & Company. Fechheimer-Keifer Co. v. Burton, 128 Tenn. 682, 51 L.R.A.(N.S.) 343, 164 S. W. 1179. That case cites Adams v. Young, 200 Mass. 588, 86 N. E. 942.

In the latter case the defendant, as here, had purchased a stock of goods in violation of the Bulk Sales Law. There, the seller and purchaser acted in good faith and with no actual intent to defraud creditors, and, as in this case, a large part of the consideration was paid over to a creditor. The creditor there, however, held two mortgages on the goods, and had taken possession of a part of the property, under the terms of the mortgage. Upon the payment of these claims, he discharged the

first mortgage and assigned the second to the purchaser of the goods. The balance of the purchase price was used in paying other small debts which were owing by the seller.

It was held that the plaintiff (the trustee in bankruptcy of the seller) was entitled to no relief against the defendant (the purchaser), and the court there said:

"But one whose purchase of property has, for that reason, been avoided by the creditors of the seller, being himself free from any actual fraud, may stand in the place of creditors whose demands he has paid out of the property or in consideration of the transfer to himself. Citing, Loos v. Wilkinson, 113 N. Y. 485, 4 L.R.A. 353, 10 Am. St. Rep. 495, 21 N. E. 392; Robinson v. Stewart, 10 N. Y. 189; Pond v. Comstock, 20 Hun, 492; Butler v. White, 25 Minn. 432; Crowninshield v. Kittridge, 7 Met. 520. So, if he has paid off debts which constituted liens or encumbrances upon the property conveyed to him, he may, for his protection and reimbursement, take, by subrogation, the rights of the secured creditors whom he has thus paid. . . . The merely constructive fraud of a purchaser will not prevent him from being protected in this manner, if he has not himself actively participated in the fraud."

We see no reason why that same principle is not applicable here. As a matter of equity, Nelson should be subrogated to the rights of Farwell, Ozmun, Kirk, & Company, as they existed at the time of the sale. In other words, all the creditors of Zorn were entitled to was to have the value of the entire stock of merchandise applied to the discharge of their debts. Provided, further, they had attached or garnished the goods, and reduced their debts to judgment.

By the majority opinion, the creditors attaching and those not attaching are not only allowed to resort to the value of the entire stock of merchandise, but also, in effect, to the sum of $4,947.84, which Nelson had paid Farwell, Ozmun, Kirk, & Company. In other words, there was that amount left to the remaining creditors for the satisfaction of their debts, more than if Farwell, Ozmun, Kirk, & Company had not been paid.

Now, it would seem, all the creditors, in any event, are entitled to, is that the value of the whole stock of goods be forthcoming to satisfy the claims of all creditors whose claims were in existence at the date of

sale. In other words, that the law means there was no sale, and that matters must be placed in the same condition as they were before the sale.

In this view of the case, Nelson should be permitted to share *pro rata* with all the creditors, even if, as claimed by the majority opinion, all the creditors are entitled to share without any attachment proceedings, etc.