[File No. 6277.]

C. H. GRIFFIN, Respondent, v. ALLIS-CHALMERS MANUFAC-
TURING COMPANY, a Corporation, Appellant.

(259 N. W. 89.)

Opinion filed December 31, 1934.   Rehearing denied March 13, 1935.

*Lawrence, Murphy, Fuller & Powers,* for appellant.
*Jacobsen & Murray,* for respondent.

PER CURIAM.   The plaintiff brings action against the defendant upon the theory that on or about June 1, 1931 he was a creditor of the Advance-Rumely Thresher Company, Inc., and that on said date the defendant purchased in bulk the entire stock of merchandise and fixtures belonging to the Advance-Rumely Thresher Company, Inc., in violation of the Bulk Sales Law of this state (Comp. Laws 1913, §§ 7224–7227).

It is the claim of appellant that the Advance-Rumely Thresher Company, Inc., never sold or transferred any of its property to the defendant at any time; that on June 1, 1931 the plaintiff was not a creditor of the Advance-Rumely Thresher Company, Inc.; that the defendant never at any time agreed to pay any claim or debt which the plaintiff

may have had against the Advance-Rumely Thresher Company, Inc.; and the defendant is not a trustee for creditors of the Advance-Rumely Thresher Company, Inc.

There was a trial of the issues to the court without a jury and the defendant appeals from the judgment entered in favor of the plaintiff and from the order overruling its motion for a new trial.

The trial court found that the defendant purchased from the Advance-Rumely Thresher Company, Inc., its entire stock and property; and found that this was in violation of the "Bulk Sales Law" of this state.

Defendant says that even if this be so yet the plaintiff was not a creditor of the Advance-Rumely Thresher Company, Inc., at the time of the sale and purchase and therefore cannot take advantage of the provision of the "Bulk Sales Law." If this claim is true then the contention is correct. See Ewaniuk v. Rosenberg, 34 N. D. 93, 157 N. W. 691; McMillen v. Nelson, 47 N. D. 284, 291, 181 N. W. 618, 620.

In August, 1928, the plaintiff purchased from the Advance-Rumely Thresher Company, Inc., an oil pull tractor, guaranteed by the company to be first-class, and paid therefor the sum of $1,800.00 by the transfer of a tractor at the agreed value of $700.00 and by giving two negotiable promissory notes in the aggregate of eleven hundred dollars. The tractor was not as guaranteed and within a reasonable time thereafter the defendant rescinded the sale, placing the tractor at the disposal of the seller and demanding the return of his consideration. Later, and in the "spring of 1929," the Thresher Company informed the plaintiff that it would make the tractor work if he would pay it the sum of $350.00, and if it failed to do as agreed it would return the entire purchase price. The plaintiff paid the amount demanded, but the company failed to make the tractor work. The company then offered to rebuild the tractor and make it work if the plaintiff would pay the further sum of $250.00, agreeing that if the tractor would not work it would return him all the consideration. Plaintiff relied upon these promises and paid the sum of $250.00; but was deceived again. Then, in the fall of 1929, the Thresher Company represented to the plaintiff that if he would pay the note then due it would guarantee to make the tractor work, rebuild it, or give him a new one and if it failed to do so it would give him back his money. Once more the

plaintiff relied upon this agreement and made the payment; but the Thresher Company failed to make good its promise. In 1931 similar offers were made by the Thresher Company and when the Thresher Company failed to make good its promises the plaintiff stood upon the rescission he had made in "the fall of 1929," and demanded the return of all payments. On or about November 12, 1932, the plaintiff commenced action against the Advance-Rumely Thresher Company, Inc., for recovery of the consideration paid and on February 4, 1933, judgment was entered in favor of the plaintiff against the Thresher Company for $2,294.70.

Prior to the purchase of the stock of goods there were two companies with similar names—Advance-Rumely Thresher Company, Inc., and Advance-Rumely Corporation. These combined at the time of the sale to the defendant and were known in the contract as Advance-Rumely. The sale of the Advance-Rumely to the defendant was made June 1, 1931—some twenty months before the plaintiff obtained his judgment for damages for the breach of contract for purchase and sale of the tractor.

Our statute, § 7216 of the Compiled Laws, defines the term "Creditor" thus: "A creditor within the meaning of this chapter (chapter dealing with special relations of debtor and creditor) is one in whose favor an obligation exists by reason of which he is or may be entitled to the payment of money." Section 5763 says: "An obligation is a legal duty by which a person is bound to do or not to do a certain thing." The defendant claims that under the very nature of the circumstances and within the purview of the "Bulk Sales Law" plaintiff could not be considered a "creditor."

The Bulk Sales Law provides: "The sale, transfer or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise and fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller, transferrer or assignor, shall be void as against the creditor of the seller, transferrer or assignor, unless the seller, transferrer, assignor and purchaser, transferee and assignee, shall, at least five days before the sale, make a full detailed inventory, showing the quality and, so far as possible with exercise of reasonable diligence, the cost price to the seller, transferrer and assignor of each

article to be included in the sale; and unless the purchaser, transferee and assignee demand and receive from the seller, transferrer and assignor a written list of names and addresses of the creditors of the seller, transferrer and assignor with the amount of indebtedness due or owing each, and certified by the seller, transferee and assignor, under oath, to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser, transferee and assignee shall, at least five days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally or by registered mail every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof." (Comp. Laws 1913, § 7224.)

Did the legislative assembly in speaking of a "creditor" or "creditors" of the seller, transferrer or assignor of a stock of merchandise have in mind a creditor as defined by § 7216, supra? In short, did the legislative assembly intend that every creditor, as defined by § 7216, supra, should be a creditor within the purview of the Bulk Sales Act; or did it intend that the term "creditor" should have a more limited meaning? A creditor as defined by § 7216, supra, includes every person "in whose favor an obligation exists by reason of which he is or may be entitled to the payment of money." A creditor as thus defined includes the holder of a claim for a possible contingent liability, or the holder of an unliquidated claim, and without regard to whether the claim arises in tort or in contract. It includes every possible claim that may be discharged by the payment of money and that may be made the basis of a judgment for money. A majority of the court are of the opinion that the very language of the Bulk Sales Act negatives any intention that the act should apply to the holders of a contingent or unliquidated claim, because it provides that the seller, transferrer or assignor shall prepare "a written list of names and addresses of the creditors of the seller, transferrer or assignor with the amount of indebtedness due or owing each and certified by the seller, transferrer and assignor under oath to be a full, accurate and complete list of his creditors and of his indebtedness." This language clearly indicates that the claims required to be listed must be liquidated claims; and that it was not intended that all possible contingent and unliquidated claims should be listed. In short, the court is of the opinion that the provi-

sions of the Bulk Sales Law do not apply to an uncertain, unliquidated or contingent claim arising either in tort or in contract.

This is in accord with the views of courts in other jurisdictions under statutory provisions practically identical with our own. Superior Plating Works v. Art Metal Crafts Co. 218 Ill. App. 150, 151; Harry B. Smead Co. v. Johnson, 262 Ill. App. 385; Apex Leasing Co. v. Litke, 173 App. Div. 323, 159 N. Y. S. 707; Adams-Flanigan Co. v. Di Donato, 180 App. Div. 342, 167 N. Y. S. 948.

Superior Plating Works v. Art Metal Crafts Co., 218 Ill. App. 150, supra, involved a claim for damages for failure to deliver certain property in accordance with the contract and for defects in certain quantities of property that had been delivered. The court held that the holder of such claim was not a creditor within the meaning of the Bulk Sales Act. In its opinion in that case the court said:

"It is apparent if the word creditor is to be taken in the broad sense in which it is sometimes used, as applying to any legal liability that may have been incurred upon a contract, express or implied, or in tort, then appellant was at said time a creditor within its meaning. On the other hand, if the word is to be construed in the limited sense in which it sometimes is used, as applying only to one who holds a demand which is certain and liquidated, then appellant was not a creditor within its meaning. Steele-Wedeles Co. v. Shoodoc Pond Packing Co. 153 Ill. App. 576; Capes v. Burgess, 135 Ill. 61, 25 N. E. 1000.

The Bulk Sales Law is in derogation of the common law and therefore should be strictly construed as to its application. We think it clearly should not be applied to parties holding claims in tort, and the same reasoning would lead us to conclude that the holder of a claim, such as this one, which was uncertain, unliquidated and contingent, would not be a creditor within the meaning of the act. To hold otherwise would give to claimants possessing uncertain and speculative demands a power to harass and interfere with the business of persons against whom such claims are made, which we think could not have been within the intention of the legislature. This construction is, as it seems to us, not only reasonable but in harmony with the construction placed upon a similar law by the courts of New York. Apex Leasing Co. v. Litke, 173 App. Div. 323, 159 N. Y. S. 707." 218 Ill. App. 150, 151.

The principle was later reaffirmed by the same court in Harry B. Smead Co. v. Johnson, 262 Ill. App. 385, supra. Under the undisputed facts in this case the claim of the plaintiff here was not only unliquidated but contingent at the time of the transfer. It was not reduced to judgment till more than twenty months after the transfer.

What has been said as regards plaintiff not being a creditor within the purview of the Bulk Sales Law represents the views of Justices Burke, Christianson and Nuessle, and does not represent the views of Chief Justice Burr and Mr. Justice Moellring. They are of the opinion that the term "creditor" in the Bulk Sales Act must be accepted in its broadest sense. In short, they are of the opinion that the definition of a creditor contained in § 7216, supra, is applicable without modification to the term "creditor" in the Bulk Sales Act.

It being the judgment of the court that plaintiff was not a creditor at the time of the transfer and sale it follows that there is no cause of action against the defendant here. The judgment appealed from is therefore reversed and the action is ordered to be dismissed.

CHRISTIANSON, BURKE and NUESSLE, JJ., concur.

BURR, Ch. J., and MOELLRING, J., dissent.